# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

ANTHONY D. FORSTER,       )
                                   )
          Petitioner,      )
                                   )
v.                           )       **No. 3:06-0688**
                                   )       **Judge Trauger**
JAMES WORTHINGTON,      )
                                   )
          Respondent.     )

## MEMORANDUM

## I. INTRODUCTION

The petitioner, Anthony D. Forster, is a prisoner in the Brushy Mountain Correctional Complex (Brushy Mountain) in Petros, Tennessee. He brings this *pro se* action under 28 U.S.C. § 2254 seeking federal *habeas corpus* relief. The petitioner names James Worthington, Warden at Brushy Mountain, as the respondent.

## II. BACKGROUND

The Davidson County Grand Jury returned a four-count indictment against the petitioner on December 4, 1997: Count 1, aggravated robbery; Counts 2 and 3, aggravated assault; Count 4, robbery. (Docket Entry No. 13, Add. 1, pp. 001-005)[1,2] The charges stemmed from two armed robberies on June 18, 1997, one of the West Meade Cleaners on Davidson Road in Bellevue, and the other of the Arby's restaurant on Elm Hill Pike in Donelson. (Add. 2, Vol. 3, pp. 218-220, 228, 244-246, 263-265, 278-280, 358, 362) On June 30, 2000, the Grand Jury returned a superseding

---

[1] The respondent filed the record of proceedings in state court as addenda 1 through 21 to Docket Entry No. 13. References herein to these addenda use the following convention: (Add. X) where "X" is the addendum number to which reference is made. Hereinafter, no further reference is made to Docket Entry No. 13.

[2] The respondent has failed to comply with Rule LR7.03(a), Local Rules of Court which provides that "[a]ll exhibits to pleadings shall be paginated progressively beginning with the principal document, and continuing through the last page of the document, including exhibits." Where Bates' Stamp numbers appear on the bottom of the page, those are the numbers to which reference is made.

indictment amending Count 4 to especially aggravated robbery. (Add. 1, pp. 024-028)

The petitioner was tried by a jury on September 19-21, 2000 (Add. 2, Vols. 3-4, 8) and found guilty of especially aggravated robbery, but not guilty on the other three counts. (Add. 2, Vol. 8, pp. 550-551) Sentencing was set for November 1, 2000. (Add. 2, Vol. 8, p. 553)

On October 19, 2000, retained counsel, John Oliva, moved to withdraw as counsel for the petitioner. (Add. 1, p. 045) When the court convened for sentencing on November 1, the trial judge relieved attorney Oliva, noting that attorney Oliva was the petitioner's fifth lawyer since his arrest.[3] (Add. 1, pp. 008, 018-019, 045-046, 055-056, 073-074, 081; Add. 2, Vol. 10, p. 2) Attorney Nicholas Hare was appointed on November 22, 2000 to represent the petitioner. (Add. 1, p. 056)

The petitioner moved *pro se* to relieve attorney Hare on March 23, 2001. (Add. 1, p. 058) The petitioner's motion initially was denied. (Add. 1, p. 058) However, on September 7 and 21, 2001, the court convened to reconsider the petitioner's motion to relieve attorney Hare, and the petitioner's request to represent himself at sentencing. (Add. 2, Vol. 6) The petitioner's motion to represent himself at sentencing was granted at the September 21 hearing, and attorney Hare was appointed as elbow counsel. (Add. 1, p. 081; Add. 2, Vol. 6, p. 10)

The petitioner was sentenced on September 26, 2001 as a Range I violent offender to twenty-two years to be served at one hundred percent. (Add. 1, p. 077; Add. 2, Vol. 7, p. 16) The petitioner's motion for a new trial was denied on November 16, 2001 (Add. 1, p. 083; Add. 2, Vol. 5), following which he filed a notice of appeal on December 17, 2001 (Add. 1, pp. 091-092).

The petitioner's subsequent motion for appointment of counsel on direct appeal was denied. (Add. 4) Proceeding *pro se*, the petitioner raised the following issues in his brief on direct appeal:

---

[3] In his brief on appeal from the judgment of the post-conviction court, the petitioner asserts that there actually had been seven attorneys who represented him. (Add. 10, pp. 24-25) The petitioner identifies them as Steven Young, Jerrilyn Manning, Tony Adgent, Terry Canagy, Tommy Lonaburger, John Oliva, and Nicholas Hare. (Add. 10, pp. 24-25)

1) Whether the trial court violated his right to a speedy trial;

2) Whether the trial court erred in denying his motion that the trial judge recuse himself;

3) Whether the trial court erred in not sentencing him until more than a year after the jury found him guilty;

4) Whether the trial court erred in permitting the victim to testify beyond the extent of her injuries;

5) Whether the trial court erred in denying his motion for judgment of acquittal;

6) Whether the trial court erred in denying his motion to sever the offenses;

7) Whether the trial court erred in ruling that he did not have the right to be present when the jury reviewed the videotape of his statements to law enforcement officials;

8) Whether the trial court erred in denying his motion for a new trial;

9) Whether the trial court erred in finding that the prosecution had proven each element of the offense for which he was convicted;

10) Whether the trial court erred in relieving defense counsel prior to sentencing thereby frustrating his right to appeal;

11) Whether the trial court erred in imposing an excessive sentence; and

12) Whether the trial court erred by permitting the State to proceed with a malicious prosecution.

(Add. 5, pp. 3-5) The Court of Criminal Appeals affirmed the judgment of the trial court on April 1, 2003 (Add. 7), following which the petitioner's application for permission to appeal (Add. 8) was denied by the Tennessee Supreme Court on October 13, 2003 (Add. 9). The petitioner did not file

3

a petition for a writ of *certiorari* in the United States Supreme Court.

The petitioner filed a *pro se* petition for post-conviction relief on December 1, 2003. (Add. 3, pp. 0001-0034) In his petition, the petitioner raised two issues for review:

> 1)      Whether the trial court erred in determining that he had made a voluntary and knowing waiver of his right to counsel; and
>
> 2)      Whether he was denied his constitutional right to effective assistance of counsel because he did not have counsel to assist him with his motion for a new trial and on appeal.

(Add. 3, pp. 0013-0021) The post-conviction court denied the petition on January 12, 2004 without an evidentiary hearing. (Add. 3, pp. 0035-0036) The petitioner filed a notice of appeal on February 10, 2004, in which he raised a single issue: Whether the post-conviction court erred in dismissing his post-conviction petition. (Add. 3, pp. 0037-0038; Add. 10, p, i)

The Court of Criminal Appeals affirmed the judgment of the post-conviction court on June 24, 2005 (Add. 15), after which the petitioner's request for permission to rehear was denied on July 22, 2005 (Add. 17). The Tennessee Supreme Court denied the petitioner's application for permission to appeal on October 12, 2005 (Add. 18-19), following which the Tennessee Supreme Court denied his motion to "stay the proceedings and recall the mandate" (Add. 20-21). Once again, the petitioner did not seek a writ of *certiorari* in the United States Supreme Court.

The petitioner originally filed this action in the United States District Court Eastern District of Tennessee on June 8, 2006. The action was transferred to the United States District Court Middle District of Tennessee on July 14, 2006. (Docket Entry No. 5) The petitioner raised the following grounds for relief in his initial petition:

> 1)      Whether a voluntary, knowing, and intelligent waiver of his right to counsel can be presumed from a silent record;

4

2)      Whether the trial court erred in not following *United States v. McDowell*, 814 F.2d 245 (6th cir. 1987) in determining whether he had waived his right to be represented by counsel;

3)      Whether the trial court had jurisdiction to sentence him; and

4)      Whether his due process rights were violated by not being permitted to create a record, or receive a "full, fair, and adequate hearing on post-conviction regarding: **a)** his ineffective assistance of counsel allegations; **b)** his allegation that prison officials denied him access to law books during direct appeal; **c)** his challenge to the constitutionality of his waiver of counsel.

(Docket Entry No. 3, ¶ 12, pp. 6-12, cont. pp. 2-12)  The respondent was directed to file an answer, plead or otherwise respond to the petition on July 28, 2006.  (Docket Entry No. 6)

On August 11, 2006,[4] the petitioner filed a first amended petition (Docket Entry No. 9) in which he raised the following additional grounds for relief:

1)      Whether his constitutional rights were violated when the simple robbery charge was superseded by a charge of especially aggravated robbery (Docket Entry No. 9, ¶¶ 3-13, pp. 2-7);

2)      Whether his constitutional rights were violated when the prosecution failed to disclose medical reports pertaining to the victim (Docket Entry No. 9, ¶¶ 14-19, pp. 7-10);

3)      Whether his constitutional rights were violated by the manner in which the jury viewed his statements to the police (Docket Entry No. 9, ¶¶ 20-27, pp. 10-12);

4)      Whether his constitutional rights were violated

---

[4]  A document filed by an inmate is deemed to have been filed on the date that the envelope in which the document is mailed to the district court is "deposited in the institution's internal mailing system . . . ." Rule 3(d), Rules - Section 2254 Cases.  This is the date used herein to establish when the petitioner filed specific documents in this action.

because the trial court refused to sever the offenses (Docket Entry No. 9, ¶¶ 28-34, pp. 12-14);

5)  Whether defense counsel was ineffective when he failed to renew his motion to sever the offenses at the close of the state's proof and at the close of all proof (Docket Entry No. 9, ¶¶ 35-36, pp. 14-15);

6)  Whether defense counsel was ineffective when he failed to introduce the crime scene investigative report (Docket Entry No. 9, ¶¶ 37-38, pp. 15-16);

7)  Whether the state courts erred in ruling that the petitioner's right to a speedy trial had not been violated (Docket Entry No. 9, ¶¶, 39-52, pp. 16-22); and

8)  Whether defense counsel was ineffective when he failed to subpoena the victim's medical records (Docket Entry No. 9, ¶¶ 53-56, pp. 22-25).

The respondent filed an answer to the initial petition on August 21, 2006. (Docket Entry No. 10) Although the respondent addressed the claims in the petitioner's initial petition, because of the timing, the response did not address the additional claims in the first amended petition.

On September 14, 2006, the petitioner attempted to file a second amended petition without first obtaining the respondent's permission or leave of the court. (Docket Entry No. 23) The petitioner also filed a motion to file a traverse to the petitioner's August 21 answer. (Docket Entry No. 20) When the respondent did not object, the court entered an Order on November 2, 2006 granting the petitioner leave to file his second amended petition.[5] (Docket Entry No. 30) In that same Order, the court denied the petitioner's motion to file a traverse as premature. (Docket Entry No. 30) The following day, on November 3, 2006, the respondent filed an amended answer to the

_____

[5]  Although the court granted the petitioner's motion to file his second amended petition, the petitioner did not raise any new grounds for relief in that petition. Rather, the petitioner's second amended petition appears to be a verbatim transcription of his first amended petition.

6

petitioner's original and second amended petitions. (Docket Entry No. 31)

On November 17, 2006, the petitioner filed a motion seeking leave of the court to file a third amended petition. (Docket Entry No. 32-35) On January 3, 2007, after the respondent had once again not responded to the petitioner's motion, the court granted the petitioner's motion to file a third amended petition. The petitioner raised the following two new grounds for relief in his third amended petition:

> **1)** Whether the state trial and appellate courts erred in holding that he was not entitled to counsel during his first appeal as of right (Docket Entry No. 37, ¶¶ 1-14, pp. 2-10); and

> **2)** Whether trial counsel rendered ineffective assistance of counsel by withdrawing prior to the sentencing hearing (Docket Entry No. 37, ¶¶ 15-31, pp. 11-17).

In its January 3 Order, the court directed the respondent to respond to the petitioner's third amended petition. (Docket Entry No. 36) On February 16, 2007, the respondent filed an amended answer, and a motion to dismiss and for judgment as a matter of law. (Docket Entry No. 41-42)

The petitioner renewed his motion to file a traverse on February 26, 2007, and moved for an extension of time to respond to the respondent's dispositive motions. (Docket Entry No. 43-44) The court granted the petitioner's motions. (Docket Entry No. 45) On May 22, 2007, the court granted the petitioner an additional 30-day extension of time. (Docket Entry No. 51)

On June 21, 2007, the petitioner filed a motion seeking to withdraw all previous grounds for relief "to consolidate [the] issues inside the perimeter of one amended petition . . . . " (Docket Entry No. 56), and a motion for a further extension of time to file a traverse and to respond to the respondent's dispositive motions. (Docket Entry No. 58). The petitioner argued that the additional time was required "because he needed to amend his petition to overcome the respondent's motion to dismiss." (Docket Entry No. 58, pp. 1-2) The respondent objected (Docket Entry No. 62), and

7

the court denied the petitioner's motions on July 12, 2007 (Docket Entry No. 63). This matter is now properly before the court.

### III. ANALYSIS

Petitions for federal *habeas corpus* relief filed after April 24, 1996 are subject to the Antiterrorism and Effective Death Penalty Act (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (1996)(AEDPA). *See Martin v. Mitchell*, 280 F.3d 594, 602 (6th Cir. 2002)(citing *Lindh v. Murphy*, 521 U.S. 320, 326-27 (1977). Title 28 U.S.C. § 2254, as amended by the AEDPA, provides the following with respect to granting a writ of *habeas corpus* to prisoners who are in custody pursuant to a state court judgment:

> (d)     An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> > (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The "unreasonable application" of clearly established federal law differs from an "incorrect application." *Williams v. Taylor*, 529 U.S. 362, 365 (2000). Under the former, "a federal *habeas corpus* court may grant relief if the state court identifies the governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. The latter clause is satisfied when a state court "arrives at a conclusion opposite that reached by [the Supreme] Court on a question of law or . . . decides a case differently than the Court . . . on a set of materially indistinguishable facts." *Id*. at 364-65.

Where state courts have made factual determinations regarding issues presented for federal

Case 3:06-cv-00688   Document 72   Filed 08/28/07   Page 8 of 38 PageID #: 517

*habeas corpus* review, such determinations are presumed to be correct, and the petitioner has the burden of rebutting that presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see Miller-el v. Cockrell*, 537 U.S. 322, 324 (2003). Under the AEDPA, the purpose of federal *habeas corpus* review is to "ensure that state court convictions are given effect to the extent possible under the law," not to conduct a federal re-trial. *Bell v. Cone*, 535 U.S. 685, 693 (2002).

### A. Whether the Petitioner's Waiver of Counsel Was Voluntary, Knowing and Intelligent

The petitioner alleges in his original petition that his waiver of counsel prior to sentencing was not voluntarily, knowingly, or intelligently made, and that the record is "silent" on the matter. (Docket Entry No. 3, ¶ 12, pp. 6-7 and cont. pp. 2-4) The respondent argues that the Court of Criminal Appeals' determination of this issue was neither contrary to nor an unreasonable application of clearly established federal law. (Docket Entry No. 42, ¶ IV.D.1, pp. 9-11)

The Court of Criminal Appeals provided the following analysis in determining that the petitioner voluntarily waived his right to counsel:

> [W]e have thoroughly examined the record to determine the path that the defendant has taken with his attorneys, eventually leading to his self-representation. Since his arrest, the defendant had the benefit of four appointed attorneys and one privately retained attorney. Prior to trial, the defendant was appointed a public defender who asked to be relieved from his position as trial counsel to the defendant. The trial court granted the public defender's request, and the defendant retained an attorney to represent him at trial. At the conclusion of his trial, the defendant's retained attorney asked to be relieved from representing the defendant, and the court granted his motion. The trial court appointed another attorney to represent the defendant at sentencing, but the attorney moved to be relieved as defendant's counsel. The defendant also filed a motion to dismiss his

9

attorney and proceed pro se. The trial court acquiesced, in light of each attorney citing the defendant as uncooperative and argumentative. From the record, we gather that the trial court properly advised the defendant of the perils of self-representation, and the defendant made an intelligent and knowing waiver of his right to counsel. The record reflects the defendant's last attorney acted as elbow counsel as he proceeded pro se during his sentencing hearing.

(Add. 7, pp. 7-8)

The Court of Criminal Appeals determination that the petitioner made a voluntary, knowing, and intelligent waiver of his right to counsel is supported by the record in the court below. Specifically, the trial court held a hearing on the issue on September 21, 2001 (Add. 2, Vol. 6), during which the following colloquy occurred:

ATTY. HARE: . . . . Your Honor will recall we were in court, I believe it was back on Mr. Forster's Motion to have me relieved from this case and then I filed a Motion to be relieved. And it was after we were in court that Your Honor told us to go back up and talk about all of this and get it worked out. It was at that time I realized the whole goal of his motion was to be able to proceed pro se on this matter. And then I came back down and informed Your Honor of that and you said that would be fine and Your Honor appointed me elbow counsel. But I think it might be in Mr. Forster's best interest if Your Honor would go through the admonishment about going pro se . . . .

. . .

THE COURT: Now, Mr. Forster, we were here, I believe it was last week, I'm not certain, but within the last two weeks, I guess it was two weeks ago, and at that point in time when you left the courtroom I was under the understanding that at that time you wanted Mr. Hare to continue with you, but now I understand you want to proceed pro se; is that correct?

10

FORSTER: At that time you had made a ruling that Mr. Hare was going to be relieved.

THE COURT: And then he came back down stairs and told me that that was incorrect and then he told me, no, that you wanted to proceed pro se. What I need to know is what your position is today with regard to counsel and I'll tell you why. If you determine that you want to proceed pro se, that is representing yourself, there are certain questions that I'm required to ask you.

FORSTER: Right.

THE COURT: You understand that?

FORSTER: Right.

THE COURT: If that's your determination. If you wanted to continue with Mr. Hare, that's what I need to know. So I need to know what your request is at this time with regard to representation. I just want to make it straight for the record.

FORSTER: Okay. At this time I would like to represent my pro se . . . .

. . .

THE COURT: Now, I'm required by law to ask you certain questions. I'm referring to the case of State versus, Smith versus the State, which is found at 987 SW 2d 871, I'll give you a copy of that in a minute, Mr. Forster. And what I am required to ask you and You've been sworn. First, have you ever studied law?

FORSTER: I'm having to learn due to the fact that I've had multiple attorneys.

THE COURT: All I need to know is whether you've studied the law?

FORSTER: No, I haven't.

THE COURT: Have you ever represented yourself or any other

11

|  |  |
|---|---|
| | defendant in a criminal action? |
| FORSTER: | No, Sir. |
| THE COURT: | All right. You realize, do you not, that you are charged with these crimes and you've been convicted of especially aggravated robbery? Do you understand that? |
| FORSTER: | Yes. |
| THE COURT: | The jury found you, as I recall from looking at the file, found you not guilty of counts 1, 2, and 3 and found you guilty of count 4, which was especially aggravated robbery. |
| FORSTER: | Yes. |
| THE COURT: | All right. Especially aggravated robbery is a class A felony, which caries a possible range of 15 to 60 years. Do you understand that?[6] |
| FORSTER: | Right. |
| THE COURT: | That's the possible range, all right. So you realize the charges that are against you. |
| FORSTER: | Yes, I do. |
| THE COURT: | Now, there is no waiver of fine in this case, so a fine is not a question in the matter. There could be no fine in the matter. So that's not a question that needs to be covered in the matter. Now that we are to a sentencing hearing and you want to represent yourself on a sentencing hearing, there is not a question of consecutive or concurrent, because we only have one charge to be sentenced on, so that's not a question.

You realize that if you represent yourself, you're on your own. I cannot tell you how you should try, |

---

[6] The trial court's statement regarding the upper end of the sentencing range during this hearing was incorrect. It was established at the sentencing hearing that his sentencing range was 15 to 25 years. (Add. 2, Vol. 7, pp. 5, 15)

12

what you should do on a case or advise you to do about that. You understand that?

FORSTER:     Could you repeat that?

THE COURT:  I said you're on your own, so to speak, and I can't advise you. The Court can't give you any advice one way or the other, you understand that?

FORSTER:     Right, uh-huh.

THE COURT:  Are you familiar with the Tennessee Rules of Evidence?

FORSTER:     I've reviewed it since I been incarcerated.

THE COURT:  Well, you realize that the Tennessee Rules of Evidence will control anything that's done during the trial of this case?

FORSTER:     Okay. I realize it now.

THE COURT:  Are you familiar with the Tennessee Rules of Criminal Procedure?

FORSTER:     Yes, I am.

THE COURT:  All right. And you realize they will govern what occurs in this case? Do you understand that, do you not?

FORSTER:     Uh-huh.

THE COURT:  All right. And you understand that if you decide to take the witness stand, you must present your testimony by asking questions of yourself. You cannot take the stand and tell your story. You have to do it just like it's any other trial. And what usually happens is you sit there and you will pose a question like you would say, Mr. Forster, what is your age? And then you would respond to your own question. You understand what I'm saying? You would have to conduct it like a regular trial?

13

FORSTER:        Okay.

THE COURT:      You understand what I'm saying?

FORSTER:        Uh-huh.

THE COURT:      Okay, fine.  Now, I'm required by law to instruct
                you that I think you would be far better off with a
                trained lawyer than you would representing
                yourself because I don't think you're familiar
                with criminal procedure.  I don't think you're
                familiar with the Rules of Evidence.  I don't know
                that you're that familiar with what you can and
                can't present in a trial.  You're bound by the
                Rules of Evidence and I'm just telling you that I
                think you would be better off if you were
                represented by competent counsel, you understand
                that?

FORSTER:        Uh-huh.

THE COURT:      All right, sir.  Now is this decision to represent
                yourself voluntary on your part?

FORSTER:        Yes, sir.

THE COURT:      Do you have any questions of the Court with
                regard to your representation of yourself at the
                present time?

FORSTER:        None whatsoever.  I'm ready to get this matter
                into course.

THE COURT:      All right.  Well, Court finds that he's been fully
                made aware, Mr. Hare of what his situation is and
                he has told me that this is his own decision to
                proceed representing himself and I'm going to
                allow him to do so.  I am going to appoint you,
                Mr. Hare, as elbow counsel in the matter in the
                event you feel it is necessary, or if the defendant,
                Mr. Forster seeks you advice at any time.

(Add. 2, Vol. 6, pp. 5-10)

A criminal defendant may forego representation at any stage of the criminal proceedings

14

against him; however, waiver of the right to counsel must be voluntary, knowing, and intelligent. *Iowa v. Tovar*, 541 U.S. 77, 78 (2004)(citing *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)). "[T]he law ordinarily considers a waiver knowing, intelligent, and sufficiently aware if the defendant fully understands the nature of the right and how it would likely apply in general circumstances." *United States v. Ruiz*, 536 U.S. 622, 629 (2002). However, "[e]ven if [a] defendant lack[s] a full and complete appreciation of all of the consequences flowing from his waiver, the State may nevertheless prevail if . . . the information provided . . . satisfie[s] the constitutional minimum." *Tovar*, 541 U.S. at 79 (citing *Patterson v. Illinois*, 487 U.S. 285, 298 (1988)).

In *Smith v. State*, 987 S.W.2d 871 (Tenn. Crim. App. 1998), to which the trial court referred, *supra* at p. 11, the Court of Criminal Appeals held that trial courts should question criminal defendants who wish to represent themselves according to the 16-point guideline in the appendix to *United States v. McDowell*, *supra* at p. 5. *McDowell* controls in the Sixth Circuit regarding whether a waiver of counsel is voluntary, knowing, and intelligent. *See U.S.A. v. Jackson*, 179 Fed.Appx. 921 925 (6th Cir. 2006).

A comparison of the foregoing colloquy with the 16-point guideline in *McDowell* reveals that the trial court followed the guidelines in *McDowell* in determining that the petitioner made a voluntary, knowing and intelligent waiver of his right to counsel. Accordingly, the court finds that the trial court did not err in its determination to that end. The court finds further that the Court of Criminal Appeals' determination on this issue was neither contrary to, nor involved an unreasonable application of, clearly established federal law. Accordingly, the petitioner is not entitled to federal *habeas corpus* relief on this claim.

### Certificate of Appealability

When the district court denies a ground for relief on the merits in a *habeas corpus* action, a certificate of appealability (COA) "may issue . . . only if the applicant has made a substantial

showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the standard being whether "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Because the petitioner has failed to make substantial showing of the denial of a constitutional right, a COA will not issue on this claim.

### B. Whether the Trial Court Erred in Not Following *Mcdowell* in Determining Whether The Petitioner's Waiver of Counsel Was Voluntary, Knowing and Intelligent

The petitioner alleges in his original petition that, by not following the 16-point guideline in *McDowell*, the trial court violated his constitutional right to counsel. (Docket Entry No. 3, ¶ 12, pp. 7-9 and cont. pp.5-7) The respondent argues that this claim is procedurally defaulted for purposes of federal *habeas corpus* review. (Docket Entry No. 42, ¶ IV.D.1, pp 9-11)

For the reasons explained *infra* at pp. 19-22, this claim is procedurally defaulted for purposes of federal *habeas corpus* review. More fundamental, however, as previously established, *supra*, the trial court adhered to the 16-point guideline in *McDowell* in determining that the petitioner made a voluntary, knowing, and intelligent waiver of his right to counsel. Because this claim lacks an arguable basis in law or fact, it is frivolous and, as such, without merit.

### Certificate of Appealability

The petitioner has failed to make a substantial showing of a violation of a constitutional right. Therefore, a COA will not issue on this claim.

### C. Whether the Trial Court Waived or Lost Jurisdiction Between the Time Guilt Was Determined and When the Sentence Was Imposed

The petitioner alleges in his original petition that, because he was not sentenced until more than a year after the jury found him guilty, the trial court no longer had jurisdiction to sentence him. (Docket Entry No. 3, ¶ 12, pp. 9-10 and cont. pp. 7-9) The respondent argues that, because this

16

claim "deals strictly with a state court's interpretation of state law, the sentencing issue is not within the purview of habeas review." (Docket Entry No. 42, ¶ IV.D.2, pp. 11-12)

This claim clearly amounts to a challenge to the manner in which the petitioner was sentenced under state law. "[F]ederal habeas corpus relief does not lie for errors of state law" because "it is not the province of the federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); s*ee Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Smith v. Phillips*, 455 U.S. 209, 221 (1982); *Cooey v. Coyle*, 289 F.3d 882, 902 (6th Cir. 2002). Federal *habeas corpus* courts may intervene in decisions in the application of state law <u>only</u> for the purpose of correcting errors of a constitutional dimension. *Smith*, 455 U.S. at 221. Otherwise, the district court may not grant a writ of *habeas corps* even if it determines that the state courts applied state law improperly. *Williams*, 529 U.S. at 411 (2000); *Newton v. Million*, 349 F.3d 873, 878 (6th Cir. 2003).

The petitioner does not allege a violation of the Constitution or laws of the United States in the context of this claim, nor can such an inference be liberally construed from the record. Accordingly, this claim is without merit.

### Certificate of Appealability

The petitioner has failed to make a substantial showing of a violation of a constitutional right. Therefore, a COA will not issue on this claim.

### D. Whether the Petitioner's Rights Were Violated Under the Fourteenth Amendment Because He Was Prevented from Creating a Record or Having a Full, Fair, and Adequate Post-conviction Hearing

The petitioner alleges in his original petition that he was denied his right to a full, fair, and adequate hearing on post-conviction on the issues of: **1)** ineffective assistance of counsel on the part of attorneys Oliva and Hare; **2)** the alleged abridgment by prison officials of his right of access to

17

the courts during the appellate process; and **3)** his challenge to the constitutional correctness of his waiver of counsel. (Docket Entry No. 3, ¶ 12, pp. 11-12, cont. pp. 9-12) The respondent argues that the petitioner did not have a hearing on his first two claims because he "failed to allege them in his petition for post-conviction relief." (Docket Entry No. 42, ¶ IV.D.3, pp. 12-13) In a footnote, the respondent argues in the alternative that the first two claims are procedurally defaulted. (Docket Entry No. 42, ¶ IV.D.1, p. 13 n. 2) Finally, the respondent argues that, "because there is no federal constitutional right to post-conviction review, any claim of error arising out of such proceeding is a matter for state, rather than federal, court determination. (Docket Entry No. 42, ¶ D.1, p. 13)

As an initial matter, the court concurs in the respondent's response that there is no constitutional right to post-conviction review, *Lackawanna County Dist. Attorney v. Coss*, 532 U.S. 394, 403 (2001)(citing *Pennsylvania v. Finley*, 481 U.S. 551, 557 (1987)), and, as such, the petitioner's claim that the post-conviction proceeding in his case was procedurally flawed does not constitute grounds for federal *habeas corpus* relief. Nevertheless, for the sake of completeness, the court will address the petitioner's allegations anyway.

As to the petitioner's first argument, the record shows that the petitioner alleged ineffective assistance of counsel in his petition for post-conviction relief, but only in the context of the validity of his waiver of counsel, the Court of Criminal Appeals' decision not to appoint counsel on direct appeal, the manner in which the record was assembled on appeal, and the alleged interference of prison officials with his ability to prepare his appellate brief.[7] (Add. 3, pp. 0018-0011) The post-conviction court denied the petitioner's request for post-conviction relief on the grounds of

---

[7] Apart from noting that attorney Hare represented him at the motion for a new trial (Add. 3, p. 0015), the petitioner did not mention either attorney Oliva or Hare in the context of any ineffective assistance alleged on their part in his post-conviction petition. Moreover, a fair reading of the petitioner's post-conviction petition is that the petitioner was alleging that he – the petitioner – had provided ineffective assistance in representing himself, a conclusion reflected in the Order denying the petitioner's petition for post-conviction relief. (Add. 3, p. 0036)

18

ineffective assistance, but only in terms of the validity of his waiver of counsel. (Add. 3, p. 0036) The petitioner first raised this issue of ineffective assistance of counsel in terms of attorneys Oliva and Hare in his brief on appeal from the judgment of the post-conviction court. (Add. 10, pp. 17-27) However, the Court of Criminal Appeals did not reach this issue on appeal from the judgment of the post-conviction court, noting that the petitioner did not raise this argument in his post-conviction petition. (Add. 15, p. 4)

A review of the record shows that the petitioner has never raised his first argument in any state court proceeding. Consequently, this argument is unexhausted. The AEDPA places notable restrictions on a federal court's ability to grant *habeas corpus* relief to state prisoners. First, federal *habeas corpus* courts may only consider claims that a *habeas* petitioner has previously raised before the state courts. *See* 28 U.S.C. § 2254(b); *Alley v. Bell*, 307 F.3d 380, 385 (6th Cir. 2002). Claims that have not been raised in state court are deemed unexhausted and are ordinary dismissed, without prejudice, so that the *habeas* petitioner may pursue them in state court. *Alley*, 307 F.3d at 385 (citing *Rose v. Lundy*, 455 U.S. 509, 518 (1982)). However, if the petitioner is barred from raising an unexhausted claim in state court due to a state procedural rule, then that claim is procedurally defaulted for purposes of federal *habeas corpus* review. *See Coleman v. Thompson*, 501 U.S. 722, 752-753 (1991). A claim also is procedurally defaulted where that claim was presented to the state court, but the court, rather than reaching the merits of the claim, relied on an independent and adequate state ground, such as a state procedural rule barring review of the claim, in deciding the issue. *Id.* at 734-735.

If a claim is procedurally defaulted, then federal *habeas corpus* review is prohibited unless the petitioner demonstrates both "cause" and "prejudice" for his failure to raise the claim in state court while state court remedies were available, or that a miscarriage of justice will result if the claim is not reviewed. *Alley*, 307 F.3d at 386; *Seymour v. Walker*, 224 F.3d 542, 550 (6th Cir. 2000).

19

To establish "cause," a petitioner must "show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986); *Rust v. Zent*, 17 F.3d 155, 161 (6th Cir. 1994). "[A] showing that the factual or legal basis for a claim was not reasonably available to counsel, or that 'some interference by officials' made compliance impracticable," constitutes "cause" under this standard. *Murray*, 477 U.S. at 488 (citations omitted); *see also Jamison v. Collins*, 291 F.3d 380, 388 (6th Cir. 2002)("Cause is shown when the factual basis of the claim was 'reasonably unknown' to the defendant's counsel."). To show "prejudice," default of the claim must not merely have created a possibility of prejudice to the defendant, but it must have "worked to his actual and substantial disadvantage, infecting his entire trial with errors of constitutional dimensions." *Jamison*, 291 F.3d at 388 (citing *United States v. Frady*, 456 U.S. 152, 170-171 (1982)). Finally, to demonstrate a "fundamental miscarriage of justice," a petitioner must show that the alleged constitutional violation probably resulted in the conviction of one who actually is innocent. *Murray*, 477 U.S. at 496. This exception applies only in "extraordinary cases," *Id.*, and requires a petitioner to show that he is "actually innocent." *Schlup v. Delo*, 513 U.S. 298, 327 (1995).

"These rules apply both to entirely new legal claims and new factual bases for relief; for a claim to be considered exhausted, the petitioner must have 'fairly presented' to the state courts the 'substance of his federal habeas corpus claim." *Alley*, 307 F.3d at 386 (quoting *Anderson v. Harless*, 459 U.S. 4, 6 (1982))(internal citations omitted); *see also Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998)("[T]he doctrine of exhaustion requires that a claim be presented to the state courts under the same theory in which it is later presented in federal courts."). "Although 'bits of evidence' which were not before the state courts will not render a claim unexhausted, where a federal *habeas* petitioner presents newly discovered evidence or other evidence not before the state courts such as to place the case in a significantly different posture, the state courts must be given the opportunity

to consider the evidence." *Sampson v. Love*, 782 F.2d 53, 57 (6th Cir. 1986)(quoting *Jones v. Hess*, 681 F.2d 688, 691 (10th Cir. 1982)(internal citations omitted)).

Tennessee's post-conviction statute in effect at the time the petitioner filed his post-conviction petition, Tenn. Code Ann. § 40-30-102, provides that a state prisoner must file a petition for post-conviction relief within one year of the date that his conviction becomes final on direct appeal, and that he may not file more than one petition. *Id*. at §§ (a), (c). A petitioner may, however, move to reopen a post-conviction proceeding that has been concluded if the motion is based on: **1)** a final ruling of an appellate court establishing a new constitutional right that was not recognized at the time of trial; **2)** new scientific evidence that establishes the petitioner actually is innocent; **3)** a sentence that was enhanced because of a previous conviction that was not a guilty plea with an agreed sentence, and the previous conviction has subsequently been held to be invalid; and **4)** the facts underlying the claim, if true, provide clear and convincing evidence that the petitioner is entitled to have the conviction set aside or the sentence reduced. Tenn. Code Ann. §§ 40-30-117(a)(1)-(a)(4).

Because the petitioner has filed one post-conviction petition, he may not file another. Moreover, none of the "limited circumstances" provided in §§ 40-30-117(a)(1)-(a)(4) apply to this allegation. Therefore, the motion-to-reopen provision in § 40-30-102(c) is inapplicable. For these reasons, this allegation is procedurally defaulted under state law. The next question is whether it is procedurally defaulted for purposes of federal *habeas corpus* review.

As previously established, *supra* at p. 20, before the district court may consider a claim that is procedurally defaulted under state law, the petitioner must establish cause and prejudice, or that a fundamental miscarriage of justice will occur if his claim is not reviewed. The petitioner makes no effort to establish cause and prejudice; nor does he argue that a fundamental miscarriage of justice will occur if the court does not review this allegation. Neither can such an argument be

liberally construed from the record before the court. Consequently, this allegation of ineffective assistance of counsel is procedurally defaulted for purposes of federal *habeas corpus* review.

The petitioner's second argument is that prison officials denied him access to the courts when he was trying to prepare for his appeal. The petitioner mentioned this claim in passing in his petition for post-conviction relief (Add. 3, p. 0020) and in passing in his brief on appeal from the judgment of the post-conviction court (Add. 10, pp. 15-16). This allegation does not constitute a challenge to the constitutionality of the petitioner's conviction and/or sentence, which is the domain of federal *habeas corpus*. *Heck v. Humphrey*, 512 U.S. 477, 481 (1994)(citing *Preiser v. Rodriguez*, 411 U.S. 475, 488-90 (1973)). Rather, this is an allegation against officials acting under the color of state law, which is the exclusive domain of 42 U.S.C. § 1983. Because this allegation does not sound in *habeas corpus*, it is without merit.

The petitioner's final allegation is that the post-conviction court erred in refusing to reconsider his claim that he did not voluntarily, knowingly, and intelligently waive his right to counsel. The post-conviction court ruled as follows with respect to this allegation:

> This issue was previously decided by the Tennessee Court of Criminal Appeals, whereby it ruled that the petitioner made an intelligent and knowing waiver of his right to counsel after having been warned by this Court of the dangers associated with pro se representation. This petitioner has failed to show that this issue has not been previously determined, and therefore, Pursuant to T.C.A. 40-30-106(f) and (h), grounds for relief are not available to the petitioner with regard to this contention.

The Court of Criminal Appeals affirmed the judgment of the post-conviction court based on the application of the same state statute relied on by the post-conviction court. (Add. 15, pp. 2-3)

The crux of this allegation is, once again, whether the state courts properly applied state law. As already established, *supra* at p. 17, the application of state law by state courts does not constitute

Case 3:06-cv-00688   Document 72   Filed 08/28/07   Page 22 of 38 PageID #: 531

grounds for *habeas corpus* relief, even if the courts apply the law incorrectly. Accordingly, this claim is without merit.

### Certificate of Appealability

When the district court denies a *habeas corpus* petition on procedural grounds without reaching the merits of the petitioner's underlying constitutional claims, a COA will issue only under the following conditions: **1)** "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right"; <u>and</u> **2)** "that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484. Jurists of reason would not find it debatable that the court was correct in its procedural ruling on the petitioner's ineffective assistance argument. As to his other arguments, the petitioner has failed to make a substantial showing of a violation of a constitutional right. For these reasons, a COA will not issue on this claim.

### E. Whether the Petitioner's Constitutional Rights Were Violated When the Charge of Simple Robbery Indictment Was Superseded by a Charge of Especially Aggravated Robbery

The petitioner alleges in his first and second amended petitions that his constitutional rights were violated when defense counsel did not challenge the superseding indictment that amended Count 4 in the original indictment from "simple robbery" to "especially aggravated robbery." (Docket Entry No. 9, ¶¶ 3-13, pp. 2-7; Docket Entry No. 23, ¶¶ 3-23, pp. 2-7) The respondent argues that this claim is procedurally defaulted. (Docket Entry No. 42, ¶ IV.E.1, p. 14)

The record shows that the petitioner did not raise this claim in any state court prior to raising it in this action. For reasons previously explained, *supra* at pp. 19-22, this claim is procedurally defaulted for purposes of federal *habeas corpus* review.

### Certificate of Appealability

Because jurists of reason would not find it debatable that the court was correct in its procedural ruling, a COA will not issue on this claim.

### F. Whether the Petitioner's Constitutional Rights Were Violated When the Prosecution Failed to Disclose Medical Evidence

The petitioner alleges in his first and second amended petitions that his constitutional rights were violated when the state failed to disclose medical reports that were used to amend the charge of "simple robbery" to "especially aggravated robbery." (Docket Entry No. 9, ¶¶ 14-19, pp. 7-10; Docket Entry No. 23, ¶¶ 14-19, pp. 7-10) More particularly, the petitioner alleges that his rights under *Brady v. Maryland*, 373 U.S. 83 (1963) were violated, and that he was denied a fair trial because the trial court failed to comply with its ruling pre-trial that medical evidence would not be admissible if the State did not disclose that evidence to the defense. The respondent argues that each of these allegations is procedurally defaulted. (Docket Entry No. 42, ¶ IV.E.2, pp. 14-16) The respondent also argues that the medical information at issue had no exculpatory value, and that the trial court's decision not to adhere to its own pre-trial ruling is not cognizable in federal *habeas corpus*. (Docket Entry No. 42, ¶ E.2, pp. 14-16)

The record shows that the petitioner did not raise this claim in any state court prior to raising it in this action. Accordingly, for reasons previously explained, *supra* at pp. 19-22, this claim is procedurally defaulted for purposes of federal *habeas corpus* review.[8,9]

---

[8] The court is aware that a *Brady* claim sometimes does not become apparent until after state review has concluded. This is not the case here. In his petition, the petitioner notes that the charge of "especially aggravated robbery" was returned in the superseding indictment based on the medical information at issue. The petitioner also alleges several reasons why the introduction of the medical evidence prejudiced him at trial. Therefore, it is apparent from the petition that the information at issue was known to the petitioner, and that he could have raised the issue on post-conviction had he elected to do so.

[9] "Trial court errors in state procedure and/or evidentiary law do not rise to the level of federal constitutional claims warranting relief in a federal habeas action unless the error renders the proceeding so fundamentally unfair as to deprive the petitioner of due process under the Fourteenth Amendment." *Broom v. Mitchell*, 441 F.3d 392 (6th Cir. 2006)(quoting *McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir. 2003). The alleged failure of the trial court to follow its own

## Certificate of Appealability

Because jurists of reason would not find it debatable that the court was correct in its procedural ruling, a COA will not issue on this claim.

### G. Whether the Petitioner's Constitutional Rights Were Violated When the Trial Court Ruled That the Jury Could Be Observed as They Viewed His Statements to the Police

The petitioner alleges in his first and second amended petitions that the trial court erred in ruling that the prosecutor, defense counsel, and court officer could observe the jury as it viewed the videotaped statement that the petitioner gave to the police.[10] (Docket Entry No. 9, ¶¶ 20-27, pp. 10-12; Docket Entry No. 23, ¶¶ 20-27, pp. 10-12) The respondent argues that this claim is procedurally defaulted. (Docket Entry No. 24, ¶ IV.E.3, p. 16)

The record shows that the petitioner did not raise this claim in any state court prior to raising it in this action. For reasons previously explained, *supra* at pp. 19-22, this claim is procedurally defaulted for purposes of federal *habeas corpus* review.

## Certificate of Appealability

Because jurists of reason would not find it debatable that the court was correct in its procedural ruling, a COA will not issue on this claim.

### H. Whether the Petitioner's Constitutional Rights Were Violated Because the Trial Court Refused to Sever the Offenses

---

rulings does not give rise to federal *habeas corpus* relief.

[10]  The petitioner moved to redact portions of the videotape at issue to exclude any references to the petitioner's prior criminal record. (Add. 1, p. 036) The jury viewed the videotape in the courtroom after everyone else had been required to leave. (Add. 2, Vol 8) Knowing where the redacted portions were on the videotape, defense counsel and the prosecutor observed the time on the monitor through a window on the courtroom door, and they would knock in advance of a redacted portion appearing on the screen so that the videotape would be turned off. Defense counsel and the prosecutor would then enter the courtroom, ask the jury to leave, fast-forward the videotape past the redacted portion, ask the jury to return, and then leave the jury to their deliberations as they waited outside once again. (Add. 2, Vol 8)

The petitioner alleges in his first and second amended petitions that the trial court violated his constitutional rights by refusing to sever the especially aggravated robbery offense from the aggravated robbery and aggravated assault offenses. (Docket Entry No. 9, ¶¶ 28-34, pp. 12-14; Docket Entry No. 23, ¶¶ 28-34, pp. 12-14) The respondent argues that this claim is procedurally defaulted because he did not raise it in the context of a constitutional violation, and that it is beyond the purview of federal *habeas corpus* review. (Docket Entry No. 24, IV.E.4, p. 17)

The record shows that the petitioner did not raise this claim in any state court in the context of a violation of his federal constitutional rights. Accordingly, for reasons previously explained, *supra* at pp. 19-22, this claim is procedurally defaulted for purposes of federal *habeas corpus* review.[11]

### Certificate of Appealability

Because jurists of reason would not find it debatable that the court was correct in its procedural ruling, a COA will not issue on this claim.

### I. Whether Defense Counsel Was Ineffective When He Failed to Renew His Motion to Sever the Counts at the Close of the State's Proof and at the Close of All Proof

The petitioner alleges in his first and second amended petitions that defense counsel was ineffective for not renewing the motion to sever at the close of the state's proof and at the conclusion of all proof. (Docket Entry No. 9, ¶¶ 35-36, pp. 14-15; Docket Entry No. 23, ¶¶ 35-36, pp. 14-15) The respondent argues that this claim is procedurally defaulted. (Docket Entry No. 42, ¶ IV.E.1, p. 14)

The record shows that the petitioner did not raise this claim in any state court prior to raising it in this action. For reasons previously explained, *supra* at pp. 19-22, this claim is procedurally

---

[11] For the reasons previously explained, the manner in which state courts interpret state law also is not cognizable in *federal corpus* just as the respondent argues.

26

defaulted for purposes of federal *habeas corpus* review.

## Certificate of Appealability

Because jurists of reason would not find it debatable that the court was correct in its procedural ruling, a COA will not issue on this claim.

## J. Whether Defense Counsel Was Ineffective When He Failed to Introduce the Crime Scene Investigative Report

The petitioner alleges in his first and second petitions that defense counsel was ineffective because he neither introduced the crime scene investigative report nor cross-examined the officer who neglected to document the victim's injuries. (Docket Entry No. 9, ¶¶ 37-38, pp. 15-16; Docket Entry No. 23, ¶¶ 37-38, pp. 15-16) The respondent argues that this claim is procedurally defaulted. (Docket Entry No. 42, ¶ IV.E.1, p. 14)

The record shows that the petitioner did not raise this claim in any state court prior to raising it in this action. For reasons previously explained, *supra* at pp. 19-22, this claim is procedurally defaulted for purposes of federal *habeas corpus* review.

## Certificate of Appealability

Because jurists of reason would not find it debatable that the court was correct in its procedural ruling, a COA will not issue on this claim.

## K. Whether the State Courts Erred in Ruling That the Petitioner's Speedy Trial Rights Had Not Been Violated

The petitioner alleges in his first and second amended petitions that the state courts erred in ruling that his right to a speedy trial had not been violated. (Docket Entry No. 9, ¶¶ 39-52, pp. 16-22; Docket Entry No. 23, ¶¶ 39-52, pp. 16-22) The respondent argues that the state courts' determination on this issue was neither contrary to nor an unreasonable application of clearly

27

established federal law. (Docket Entry No. 42, ¶ IV.E.5, pp. 17-18)

*Barker v. Wingo*, 407 U.S. 514 (1972) controls in those instances where a criminal defendant alleges that his right to a speedy trial has been violated. *See U.S.A. v. Gardner*, 488 F.3d 700, 719 (6th Cir. 2007). *Barker* provides a four-part test for the courts to use in such instances. Those considerations are: **1)** the length of the delay; **2)** the reason for the delay; **3)** whether the defendant asserted his right to a speedy trial; and **4)** whether prejudice to the defendant resulted. *Barker*, 497 U.S. at 523-530. None of the factors alone is enough to establish a violation; the court is required to balance its analysis of these factors along with such other factors as may be relevant. *United States v. Watford*, 468 F.3d 891, 901 (6th Cir. 2006)(citing *United States v. Schreane*, 331 F.3d 548, 553 (6th Cir. 2003)). A review of the Court of Criminal Appeals' opinion shows that it identified *Barker* as controlling and that it analyzed this claim under *Barker's* four-part test.

The first factor is the threshold inquiry. If there was no delay, then there is no need for further inquiry. *Schreane*, 331 F.3d at 553 (citing *Barker*, 407 U.S. at 530)). As previously established, *supra* at pp. 1-2, the petitioner was first indicted on December 4, 1997 but the trial did not occur until September 19-21, 2000. The Court of Criminal Appeals found that, given the length of the delay, further inquiry was warranted. (Add. 7, p. 11)

In reviewing reasons for the delay, the Court of Criminal Appeals determined that "this factor weighs against the defendant's claim," *i.e.*, the record "contained numerous references to the defendant's aggressive attitude toward his attorneys and the exasperation of the trial court in contending with the defendant's behavior toward his counsel." (Add. 7, p. 11)

As previously noted, *supra* at p. 2 n. 3, the petitioner himself confirms that he went through seven attorneys prior to sentencing. The trial court's frustration with the petitioner's delaying tactics is reflected in the following statements made by the trial judge at the hearing to relieve attorney Oliva: "Mr. Forster pulls the same old stunt every time he gets close to getting caught. He jumps

up and says he wants another lawyer. . . . I've got a whole file full of places where he says he doesn't want no . . . you do it. . . . Mr. Forster has played this game with the court, and I'm not going to trifle with Mr. Forster." (Add. 2, Vol. 10, pp. 2, 4) The record before the court supports the Court of Criminal Appeals' determination of this factor. ( (Add. 1, pp. 008, 018-019, 045-046, 055-056, 073-074, 081; Add. 2, Vol. 10; Add. 10, pp. 24-25)

As to the third factor, the Court of Criminal Appeals determined that it too weighed against the petitioner because "the [petitioner] asserted his right to a speedy trial for the first time in his pro se motion for a New Trial, filed on October 2, 2001 . . . by [which] time, the defendant had been tried and sentenced." (Add. 7, p. 12) Under the Speedy Trial Act, 18 U.S.C. § 3162, an information or indictment "shall be dismissed on motion of the defendant." *Id*. at § (a)(2). The Speedy Trial Act requires, however, that a criminal defendant raise any timeliness challenge prior to trial. *U.S.A. v. White*, 985 F.2d 271, 275 (6th Cir. 1993). After that, the right is waived. *Id*. The record before the court supports the Court of Criminal Appeals' determination that the petitioner did not challenge the timeliness of his trial until after he had been tried and found guilty. (Add. 1, p. 078)

In considering the fourth factor, the Court of Criminal Appeals determined that the petitioner "has failed to show how he has experienced any prejudice by the delay, given his problems dealing with his attorneys," and that this factor "weigh[ed] heavily on the defendant." (Add. 7, p. 12) The court disagrees with the Court of Criminal Appeals' assessment of the prejudice to the petitioner because of the delay.

The record shows that Count 4 of the original indictment was changed from robbery under Tenn. Code Ann. § 39-13-401 (Add. 1, p. 0005) to especially aggravated robbery under Tenn. Code Ann. § 39-13-403 in the superseding indictment (Add. 1, p. 0027). Robbery was a Class C felony at the time of the offense. Tenn. Code Ann. § 39-13-401(b)(1997). Especially aggravated robbery was a Class A felony at the time of the offense. Tenn. Code Ann. § 39-17-403(b)(1997). The

29

sentencing range for a Range I offender convicted of a Class C felony was three (3) to six (6) years, whereas the sentencing range for a Range I offender convicted of a Class A felony was fifteen (15) to twenty-five (25) years.  Tenn. Code Ann. § 40-35-112(a)(1) and (a)(3)(1997).  Inasmuch as the maximum sentence for a Class C felony was nine (9) years less than the minimum sentence for Class A felony, the prejudice to the petitioner caused by the delay is obvious.

Notwithstanding that the delay prejudiced the petitioner, the record supports the conclusion that the delay was due to the petitioner's efforts to manipulate the criminal proceedings by creating situations that resulted in seven attorneys seeking to be relieved.  Consequently, the court finds that factors two and three outweigh any prejudice to the petitioner and, as such, the petitioner's rights under the Speedy Trial Act were not violated. This claim is without merit.

### Certificate of Appealability

The petitioner has failed to make a substantial showing of a violation of a constitutional right.  Therefore, a COA will not issue on this claim.

### L.  Whether Defense Counsel Was Ineffective When He Failed to Subpoena the Victim's Medical Records

The petitioner alleges in his first and second amended petition that defense counsel was ineffective for not subpoenaing the victim's medical record or filing a motion prior to trial to compel the prosecution to disclose this information.  (Docket Entry No. 9, ¶¶ 53-56, pp. 22-24; Docket Entry No. 23, ¶¶ 53-56, pp. 22-24)  The respondent argues that this claim is procedurally defaulted. (Docket Entry No. 42, ¶ IV.E.1, p. 14)

The record shows that the petitioner did not raise this claim in any state court prior to raising it in this action.  For reasons previously explained, *supra* at pp. 19-22, this claim is procedurally defaulted for purposes of federal *habeas corpus* review.

### Certificate of Appealability

30

Because jurists of reason would not find it debatable that the court was correct in its procedural ruling, a COA will not issue on this claim.

## M. Wether the Trial and Appellate Courts Erred in Holding That the Petitioner Was Not Entitled to Appointed Counsel on Direct Appeal

The petitioner alleges in his third amended petition that both the trial and appellate court erred in not appointing counsel to represent him on direct appeal. (Docket Entry No. 37, ¶¶ 1-14, pp. 2-10) The respondent argues that: **1)** the petitioner fails to establish his motion for appointment of counsel on direct appeal rose to the level of a constitutional violation; **2)** the denial of appointed counsel on appeal did not violate *Von Moltke v. Giles*, 332 U.S. 708 (1948), as the petitioner contends; **3)** it was the petitioner's own misconduct and attempt to manipulate the court that led to the state courts' decision not to appoint appellate counsel; and **4)** the petitioner's catalog of alleged ineffective assistance claims does not support the underlying premise of this claim, *i.e.*, that the trial and appellate courts erred. (Docket Entry No. 42, ¶ IV.F.1, pp. 18-19)

Although neither the United States Supreme Court nor the Sixth Circuit appear to have reached this issue, other courts have recognized that the right to counsel is not a license to abuse the dignity of the court or to frustrate orderly proceedings. *See United States v. Flewitt,* 874 F.2d 669, 674 (9th Cir. 1989)("The right to self-representation is not a license to abuse the dignity of the courtroom."); *Berry v. Lockhart,* 873 F.2d 1168, 1171 (8th Cir. 1989)("A defendant has no right to manipulate his right to counsel in order to delay or disrupt the trial."); *U.S.A. v. Gallop,* 838 F.2d 107, 108 (4th Cir. 1988)("[R]ight [to counsel] must not obstruct orderly judicial procedure and deprive courts of the exercise of their inherent power to control the administration of justice."); *United States v. White,* 529 F.2d 1390, 1393 (8th Cir. 1976)("[T]he right to counsel is a shield, not a sword. A defendant has no right to manipulate his right for the purpose of delaying and disrupting

31

the trial.")

Several courts also have acknowledged that, like other constitutional rights, the right to counsel can be implicitly waived or forfeited if a defendant manipulates, abuses, or utilizes the right to delay or disrupt a trial. *See United States v. Leggett,* 162 F.3d 237, 249 (3rd Cir. 1998)(holding that defendant forfeited his right to counsel when he physically assaulted his attorney); *United States v. McLeod,* 53 F.3d 322, 326 (11th Cir. 1995)(holding that defendant forfeited his right to counsel by exhibiting abusive, threatening, and coercive conduct toward his attorney); *United States v. Fazzini,* 871 F.2d 635, 642 (7th Cir. 1989)(holding that defendant waived his right to counsel where, after being warned that he could lose the right if he failed to cooperate, defendant continued to refuse to cooperate with numerous court-appointed lawyers); *United States v. Kelm,* 827 F.2d 1319, 1322 (9th Cir. 1987)(holding that defendant implicitly waived the right to counsel where, to delay the trial, defendant refused to accept appointed counsel or hire his own attorney)(overruled on other grounds by *United States v. Heredia*, 483 F.3d 913 (9th Cir. 2007)); *United States v. Mitchell,* 777 F.2d 248, 256-57 (5th Cir. 1985)(holding defendant waived his right to counsel when, in bad faith and for purpose of delay, he retained counsel known to have a conflict of interest and failed to retain other counsel); *Richardson v. Lucas,* 741 F.2d 753, 756 (5th Cir. 1984)(holding that defendant's refusal to allow any public defender, regardless of competence, to represent him constituted a waiver of the right to counsel); *United States v. Moore,* 706 F.2d 538, 540 (5th Cir. 1983)(holding that defendant's "persistent, unreasonable demand for dismissal of counsel and appointment of new counsel . . . is the functional equivalent of a knowing and voluntary waiver of counsel"); *United States v. Leavitt,* 608 F.2d 1290, 1292 (9th Cir. 1979)(finding forfeiture after the defendant had been repeatedly warned that his failure to cooperate would result in forfeiture of counsel).

In its Order denying the petitioner's motion for appointed counsel, the Court of Criminal Appeals cited *State v. Carrruthers*, 35 S.W. 3d 516, 546 (Tenn. 2000) which, in turn, cited each of

the foregoing cases.  In its opinion, the Court of Criminal Appeals wrote:

> [T]he right to appointed counsel 'may not be used as a license to manipulate, delay, or disrupt a trial.' The appellant has been represented by at least five attorneys . . . . The trial court, given the obvious ramifications surrounding self-representation, carefully questioned the appellant about his decision.  The record plainly reflects that the appellant voluntarily, knowingly, and intelligently relinquished his right to counsel. The appellant may not now change his mind.  The trial court was more than generous in dealing with the appellant's whimsical behavior and we are not inclined to engage in similar battle with the appellant. . . .

(Add. 4, p. 6)(internal citations omitted)

As previously established, the state courts' factual determinations on an issue are entitled to the presumption of correctness absent a showing by clear and convincing evidence to the contrary. The petitioner has not rebutted the Court of Criminal Appeals' factual findings on this issue by clear and convincing evidence, or otherwise.  Accordingly, the presumption of correctness applies. Moreover, the court finds that the Court of Criminal Appeals' determination on this issue is neither contrary to nor an incorrect application of the law as it exists on this issue.  For these reasons, the court finds that this claim is without merit.

### Certificate of Appealability

In the absence of United States Supreme Court or Sixth Circuit precedent, the court finds that reasonable jurists might find the district court's determination of this issue debatable.  Accordingly, should the petitioner file an application, a COA will issue as to this claim.

### N.  Whether Defense Counsel Was Ineffective in Moving to Withdraw Prior to Sentencing to Deliberately and Intentionally Prejudice the Petitioner at All Stages of the Petition

33

The petitioner alleges in his third amended petition that defense counsel was ineffective for withdrawing as his attorney prior to sentencing, allegedly to deliberately and intentionally prejudice the petitioner throughout the remainder of the proceedings. (Docket Entry No. 37, ¶¶ 15-31, pp. 11-17) The petitioner implies that counsel abandoned him. The respondent argues that the petitioner's claim does not rise to the level of ineffective assistance under *Strickland v. Washington*, 466 U.S. 668 (1984). (Docket Entry No. 47, ¶ IV.F.2, pp. 19-20)

The petitioner argues generally that attorneys Oliva and Hare were ineffective because they withdrew, thereby "deliberately and intentionally prejudic[ing] him at all stages of the criminal proceedings." (Docket Entry No. 37, ¶¶ 15-16, p. 11) For the reasons previously explained, *supra* at pp. 19-22, the petitioner's ineffective assistance claims against attorneys Oliva and Hare are procedurally defaulted for purposes of federal *habeas corpus* review. However, even if it were determined that this ineffective assistance claim were not procedurally defaulted for purposes of federal *habeas corpus* review, as shown below, the claim is without merit.

The petitioner's first argument is that "circumstances exist[ed] that render[ed] the state's post-conviction process ineffective to protect the rights . . . guaranteed to him under federal law and the Constitution of the United States." (Docket Entry No. 37, ¶¶ 17-19, p. 11) The court is unable to determine how this argument supports the petitioner's ineffective assistance claim. Nevertheless, as previously established, *supra* at p. 18, state post-conviction proceedings are creations of state law, and do not accrue to a criminal defendant under the Constitution or laws of the United States. Accordingly, the petitioner's argument that the state post-conviction proceeding in his case was flawed does not entitle the petitioner to federal *habeas corpus* relief.

The petitioner's next argument is that the state courts failed to follow state post-conviction rules and procedures in not appointing counsel to represent him on post-conviction. (Docket Entry

34

No. 37, pp. 11-14) Again, the court is unable to determine how this argument supports the petitioner's ineffective assistance claim. However, as previously established, *supra* at p. 17, claims that state courts failed to follow state law are not cognizable in federal *habeas corpus*. Moreover, there is no constitutional right to counsel in state post-conviction proceedings. *See Finley*, 481 U.S. at 557. Accordingly, this argument is without merit.

The petitioner argues next that his waiver of counsel was forced upon him. (Docket Entry No. 37, ¶¶ 20-25, pp. 13-14) Here again, the court is unable to determine how this argument supports a claim of ineffective assistance of counsel. Nonetheless, as previously determined, *supra* at pp. 9-16, the petitioner waived his right to counsel voluntarily, knowingly, and intelligently. The petitioner cannot support a claim that he was forced to waive his right to counsel when the record shows that the petitioner got what he asked for. This argument is without merit.

The petitioner's first actual ineffective assistance argument is that attorney Oliva "breached the contract he entered into to zealously represent the petitioner at his sentencing hearing" by filing a "fraudulent motion to withdraw." (Docket Entry No. 37, ¶¶ 26-27, pp. 15-16) Breach of contract is not cognizable in *habeas corpus*. This argument is without merit.

The petitioner argues next that he "did not acquiesce" in attorney Oliva's request to withdraw, and that attorney Oliva "filed the motion to withdraw over the objection of the petitioner . . . ." (Docket Entry No. 37, ¶¶ 28-30, p. 16) As previously noted, a hearing on this matter was held on November 1, 2000. (Add. 2, Vol. 10) At that hearing, attorney Oliva advised the trial court that:

> Mr. Forster has expressed to me that he does not trust my advice. He does not concur in my counseling of him, and feels that I am not capable of rendering . . . . effective assistance to him. Your Honor, my understanding of the constitution is that I've got to provide him with effective assistance of counsel. And if that trust does not exist between Mr. Forster and

> myself I cannot render him that constitutionally
> required [duty].

(Add. 2, Vol. 10, pp. 1-2) Based on attorney Oliva's explanation, the trial court relieved him of his

duties representing the petitioner. (Add. 2, Vol. 10, p. 2) In response to attorney Oliva being

relieved, the petitioner said, "Thank you." (Add. 2, Vol. 10, p. 2) At the conclusion of the hearing,

the following additional discussion transpired:

> MR. OLIVA: Your honor, before Mr. Forster . . . is taken out of the
> courtroom, may I address one other matter? Although
> he had instructed me not to present anything to the
> Court I did prepare a sentencing memorandum. If I
> understood Mr. Forster earlier today he wanted this
> submitted to the Court so that he would have the
> option of deciding whether or not the Court would - -
>
> FORSTER:    No. I did not want this submitted to the Court.
>
> THE COURT: Then, don't submit it, sir.

(Add. 2, Vol. 10, p. 3) When the trial court instructed attorney Oliva not to file the sentencing

memorandum on the petitioner's behalf, the petitioner again said, "Thank you." (Add. 2, Vol. 10,

p. 3)

As shown above, the petitioner did not object to attorney Oliva's motion to withdraw as he

claims. Nor did the petitioner acquiesce. On the contrary, the record supports the conclusion that

the petitioner approved of attorney Oliva's motion to withdraw, and was grateful when the motion

was granted. The petitioner cannot create the problem about which he complains, and then blame

consequences of his actions on ineffective assistance of counsel.[12] This argument is without merit.

Finally, apart from asserting that this claim also pertains to attorney Hare (Docket Entry No.

---

[12] At sentencing, the petitioner sought to cast blame on the trial court for relieving attorney Oliva, thus causing
the petitioner to have to proceed *pro se*. (Add. 2, Vol. 7, pp. 9-13) However, it is apparent from the record as a whole
that the petitioner was using the sentencing hearing for the purpose of creating a record on this issue.

36

37, ¶ 19, p. 12), the petitioner does not provide any factual allegations in support of his claim against

him within the context of this argument.[13]  As such, the petitioner's claim against attorney Hare is

conclusory.  Conclusory allegations, without supporting factual allegations or evidentiary support,

do not provide a basis for *habeas corpus* relief. *See Stanford v. Parker*, 266 F.3d 442, 460 (6th Cir.

2001)(citing *Zettlemoyer v. Fulcomer*, 923 F.2d 284, 301 (3rd Cir.1991)(bald assertions and

conclusory allegations do not provide sufficient basis to hold an evidentiary hearing in federal

*habeas corpus* proceedings).  Because the petitioner does not support his ineffective assistance claim

against attorney Hare with factual allegations, this argument is without merit.

### Certificate of Appealability

The petitioner has failed to make a substantial showing of a violation of a constitutional

right.  Therefore, a COA will not issue on this claim.

### III.  CONCLUSION

For the reasons explained herein, the petitioner is not entitled to federal *habeas corpus* relief

on the grounds alleged.  Therefore, his petition will be denied and this action dismissed.  Should the

petitioner file a timely notice of appeal from this Order, such notice shall be docketed as both a

notice of appeal and an application for a COA, 28 U.S.C. § 2253(c); *Slack*, 529 U.S. at 483; Rule

22(b), Fed. R. App. P., which will issue <u>only</u> as to the petitioner's claim that the state courts erred

in determining that he was not entitled to appointed counsel on direct appeal, *supra* at pp. 31-34,

*see Castro v. United States of America*, 310 F.3d 900, 901 (6th Cir. 2002); *Murphy v. Ohio*, 263 F.3d

466, 467 (6th Cir. 2001); *Porterfield v. Bell*, 258 F.3d 484, 485-487 (6th Cir. 2001); *Lyons v. Ohio*

---

[13]   The petitioner does mention attorney Hare in passing in this claim where the petitioner writes, "[T]he question of whether a waiver of counsel is voluntary turns on the judge's duty to inquire into why the petitioner was wishing to forego counsel (Attorney Nicholas D. Hare) to make certain that the petitioner was not choosing between appearing pro se due to counsel's ineffectiveness."  (Docket Entry No. 37, ¶ 24, p. 14)

*Adult Parole Auth.*, 105 F.3d 1063, 1073 (6th Cir. 1997)(overruled in part on other grounds by *Lindh v. Murphy*, 521 U.S. 320, 326-27 (1977)).

     An appropriate Order will be entered.

Aleta A. Trauger
United States District Judge